R. G. QUISENBERRY ET AL. V. NAT G. MITCHELL ET AL.

No. 4425.   Decided March 9, 1927.

(292 S. W., 160).

**1.—Highways—Bond Issue—Specifying Purpose—Change of Route—Injunction—Case Stated.**

The notice of the commissioners court specifying the purpose of an election authorizing the issue of county bonds for construction of a highway called for the same upon an existing named highway between designated points.   The election was held in contemplation by the voting taxpayers of aid of the county by State and Federal funds under direction of the State Highway Commission and the Federal authorities.   By these certain controlling points (towns in the various counties through which the road was to run) were already designated; but the designation of the route of the road between such controlling points was left open for future determination by such authorities.   The route so finally selected by them differed, in some cases by several miles, from that of the existing road named in the election notice, which had previously been designated and numbered by the State Highway Commission for maintenance purposes only.   The change of route was of inconvenience and detriment to various taxpayers who had voted on the bonds, and who united in a petition for injunction restraining the commissioners court from expending the proceeds of the bonds voted in construction of the highway on such changed route.   It was only for such changed route as approved by State and Federal authorities that either State or Federal aid could be secured for construction of the road.   *Held* that, the bonds having been voted in contemplation of State and Federal aid in the construction, to be had only for a route between the controlling points designated which the State and Federal authorities should thereafter agree upon, the use of their proceeds in construction upon such lines was authorized by the vote and the injunction sought was properly refused. (Pp. 386, 387).

**2.—Same.**

The fact that the voters understood that the bonds were to be used to secure State and Federal aid also in the construction of the proposed highway had the effect of explaining the meaning of the designation of the highway to which the proceeds were to be applied in the election notice. But the change in its route by State and Federal authorities could not depart from a controlling call in such notice that it pass through a designated town (Westover).   (Pp. 387, 388).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Baylor County.

The Supreme Court referred the questions to the Commission of Appeals, Section A, for their opinion thereon, and here adopt same and direct that it be certified as the answer of the court.

*Joe A. Wheat,* and *Carrigan, Montgomery, Morgan & King,* for appellants.

Where the Commissioners Court made an order for an election to determine whether bonds should be issued for road building purposes and described in said order the road or roads that were to be improved should the bonds carry, it could not thereafter exercise its discretion to build the road so as not to substantially comply with the published order for such election.   Moore v. Kaufman, 200 S. W., 374; Black v. Strength, 246 S. W., 79; Stucky v. Jones, 240 S. W., 565; Grayson County v. Harrell, 202 S. W., 160; Wright v. Allen, 257 S. W., 980; Major v. Aldan Borough, 209 Pa., 247; Scott v. Forest, 174 Ky., 672, 192 S. W., 691.

If the Commissioners Court had intended that the road might be substantially shifted to comply with the requirements by the State and Federal Highway Departments they could have easily made a reservation to that effect in the order so promulgated. But to the voters of Baylor County at that election "on Highway 24, through Westover to the east line of Baylor County" meant nothing, and could mean nothing to them except the road laid on the ground as it existed at that time.

*Dickson, Newton & Dickson,* for appellees.

In submitting the proposition for the issuance of bonds to the electors of a county, the Commissioners Court "shall distinctly specify the purpose for which the bonds are to be issued," and the Commissioners Court cannot lawfully divert the proceeds of such bonds to other purposes than those so "distinctly specified." Arts. 605 and 606, Rev. Civ. Stats. of Texas; Moore, County Judge, v. Coffman, 189 S. W., 94; same case, 109 Texas, 93, 200 S. W., 374; Stuckey v. Jones, County Judge, 240 S. W., 565; Ardrey v. Zang, 127 S. W., 1114; Grayson County v. Harrell, 202 S. W., 160; Black v. Strength, County Judge, 112 Texas, 188, 246 S. W., 79; Wright v. Allen, 257 S. W., 980; Haverbekken v. Coryell County, 112 Texas, 422, 247 S. W., 1086; Black Bros. v. State, 253 S. W., 576; 29 C. J., p. 419—Text under description

of road, 420, Note 92 (a), 93 (a), 93 (i) and (j); U. S. Stats., 1923 Sup., 7477¼c.

Where a petition for injunction is insufficient to authorize the relief prayed for, it cannot be strengthened by evidence. Where answer denying allegations of petition is verified general equity practice of refusing the writ should ordinarily be followed. 32 C. J., 399, Sec. 672—Under the head of Want of Equity in Bill, 33, Sec. 12b.—Under the head of "Caution Required in Issuing Injunctions;" Boykin v. Patterson, 214 S. W., 611; Graham v. Knight, 222 S. W., 326; Axtell v. Lott, 152 S. W., 192; Wainwright v. Cotter, 137 S. W., 419.

It is in testimony undisputed that the State and Federal highway engineers have said they would not have approved the route for said Highway 24 as located by the Commissioners Court in its order of March 16, 1925, and that they would not approve the route contended for by appellants in this case. It therefore seems clear to us that were the Commissioners Court, in view of all the facts and circumstances of this case, to undertake to spend the proceeds from said bonds in the construction of Highway 24 along the zig-zag road contended for by appellants they would be diverting the said proceeds from said bonds unlawfully and to another and different purpose than that set out in the notices in plain and unambiguous language and would defeat and destroy the very intention and purpose of the tax-paying voters of Baylor County in carrying said election in favor of said bonds to the end that the system of hard-surfaced highways in Baylor County would be located and maintained in accord with and upon approval of the State and Federal Highway Departments.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

The Honorable Court of Civil Appeals for the Second Supreme Judicial District has duly submitted certified questions herein as follows:

"CERTIFIED QUESTIONS.

"TO THE HONORABLE SUPREME COURT OF TEXAS:

"In this case R. G. Quisenberry and some forty-nine other citizens and alleged property holding taxpayers, filed suit in the District Court of Baylor County for an injunction to restrain the Commissioners Court of that county from using any part of the funds, derived from a sale of the bonds voted at an election held in the county on March 15, 1924, for the purpose of con-

structing and improving a certain designated highway. It was alleged that the Commissioners Court, prior to the election, on, to-wit, February 5, 1924, issued a notice of the election. The petitioners alleged that one of the highways mentioned in the order of election to be constructed, maintained and operated was the one "from the courthouse at Seymour on State Highway No. 24 through Westover to the east line of Baylor County." They alleged that this highway was also known as the FFF Highway, and had been named Highway No. 28, but that prior to the order of election said highway had been designated by the State Highway Department as Highway No. 24; that this designation was known generally to the citizens and property holding voters of Baylor County prior to and at the election held on March 15, and that such voters relied on the designation in the order of election of this highway as one to be constructed and improved, and that the order designating this highway as one to be constructed, maintained and operated with funds derived from the bond election constituted a contract on the part of the Commissioners Court that it would be so constructed, maintained and operated. They further alleged that more than a year after the election the Commissioners Court entered an order locating and establishing State Highway No. 24 from the town of Seymour to the east line of Baylor County, and directed that said road, thus established, should be constructed along lines different from the old State Highway 24, and that said new route, as located by the Commissioners Court on March 16, 1925, varied from the old highway so as to make many of the property holding taxpayers and voters who lived along Highway 24 as it was before the change inaccessible to the designated new highway; that Highway 24, as it was established and designated before the election and as established and designated after the election, radically differed in their routes and were from one to seven miles apart. Plaintiffs alleged that they and others similarly situated were irreparably damaged by said proposed change, and would be greatly inconvenienced thereby.

"The defendants answered that on September 1, 1923, the State Highway Commission designated and numbered the State Highway System and submitted to the Federal Bureau of Public Roads the State highways to be included in the Federal aid or 7% system. The highway from Mineral Wells via Jacksboro, Graham, Olney and Seymour to Benjamin was included in this Federal aid system and under the new numbering of the highways this highway carried and now carries the new designa-

tion of Highway No. 24; that on October 12, 1923, the Secretary of Agriculture advised the Texas State Highway Department that the Federal aid system for Texas had been approved and included in this system was said Highway No. 24, and the Secretary of Agriculture described said Highway No. 24 as follows: 'From Mineral Wells via Jacksboro, Graham, Olney and Seymour to Benjamin'; that said Secretary's letter of October 12, 1923, further stated: 'It is recognized also that the final location on which shall be constructed each route or portion of route between the control points named thereon, as above, shall be matter for determination later as locations are made and other information which should govern develops and may not necessarily follow the location between these control points as shown on maps that are made by the State. * * * The approval of routes on the system of Federal aid highways submitted by a State as touching certain specified control points, is not to be construed as approval for construction on the location shown on the map between such control points, but such location for construction shall be subject to later determination in the light of location surveys which may develop. * * * The designation of this Highway No. 24, as well as all others, is only made to pass through certain specified control points, which in this case are Mineral Wells, Jacksboro, Graham, Olney, Seymour and Benjamin. The location between these control points is not made until after location surveys have been made.'

"The defendants further alleged that the highway as designated by the Commissioners Court on March 16, 1925, was some five miles shorter, from Seymour to Westover, than the FFF Highway, which the plaintiffs claimed to have been designated as Highway No. 24 before the election. It was further alleged that the construction of the new highway would cost some $90,000 less than the construction of the highway for which plaintiffs contended. The defendants further specially denied that there was at the time of said bond election, or at the time of the filing of the answer, any lawful known road known as the Seymour and Westover road, or that there is any lawful road of any name or without a name that runs from Seymour to Westover; or that there is any road or highway known or designated or recognized by the State or Federal Highway Departments between the town of Seymour and the town of Westover other than the said Highway No. 24, passing through the control points of Mineral Wells, Jacksboro, Graham, Olney, Seymour and Benjamin.

"The pleadings for both parties are voluminous, but we believe we have stated the issues involved.

"The evidence shows that a large number of citizens and other property holding taxpayers in that part of Baylor County understood and believed at the time of the bond election that the FFF Highway, the one that the plaintiffs claimed was then designated as State Highway No. 24, had been so designated by the State Highway Department.

"Defendants' witness, H. E. Conklin, testified that he was a maintenance superintendent with the State Highway Department; that his duties were to oversee the maintenance, to employ and discharge men in the maintenance work, to watch over the welfare of the road and the equipment of the State Highway Department, to check up the payrolls, and to purchase equipment and material; that he was acquainted with the highway from Mineral Wells to Benjamin; that the number of that highway is 24; that he received notice that it was so numbered in December, 1923, and that the designation had been made by the State Highway Commission; that under his direction, junction signs at the crossings of the highways were put up on the old highway on March 20, 1924; that in so marking the old highway he did not mean thereby to permanently designate the old highway as No. 24, but to designate it only for the purpose of temporary maintenance; that the only reason he did not put the markers on this highway sooner was for lack of sufficient help; that he had done some work on this highway, for the Highway Department, some years ago.

"The evidence tends to show, and in this certificate we find it does show the following facts:    That the parties plaintiff, and others similarly situated, will be somewhat inconvenienced and damaged by not having the highway run by or near to their property; that the newly designated highway is a straight line from a point just east of Seymour to the place of junction with the old highway, and this is a distance of some fifteen miles. That the old highway runs along survey lines and is some three and one-half miles longer than the new highway.   The evidence shows that the cost of constructing the highway along the old route is about $18,000 a mile, and that the cost of constructing the highway along the new route is some more.   The evidence further shows that the general purpose and understanding of the voters in the bond election was that State and Federal aid would be secured to construct the highway mentioned in the order of election.   The evidence tended to show that no State or Federal

aid would be given to the construction and maintenance of the highway as located on the lines claimed by plaintiffs. There is no evidence in the record to show that the voters had any knowledge of the letter written by the Federal Highway Department to the State Highway Department, from which quotations have been given hereinabove.

"The trial court denied the injunction and the plaintiffs have appealed.

"We have given careful consideration to the case and find ourselves not thoroughly agreed as to what disposal we should make of the appeal. By reason of this disagreement, and the importance to the state of the questions to be decided, and that they be so decided by a court of final jurisdiction as soon as possible, we have concluded that it is advisable to certify to your honors the following questions hereinafter shown:

"1. Under the pleadings shown and the facts as found by us, did the trial court err in denying the injunctive relief sought?

"2. Did the fact that the voters in the election understood that by the county's voting the bonds that it would secure State and Federal aid, and that the further fact that this highway would be constructed was to be a part of the State and National Highway System, and that neither the State Highway Department nor the Federal Highway Department would approve the expenditure of any moneys under the control of those departments on the somewhat circuitous route claimed by plaintiffs, have any effect on the question to be decided. If so, what effect?

"We have examined a number of authorities relied on by appellants, such as Moore v. Coffman, 109 Texas, 93, 200 S. W., 374, and also by this court in same case, 189 S. W., 94; Black v. Strength, 112 Texas, 188, 246 S. W., 79; Stuckey v. Jones, 240 S. W., 565, by this court; Grayson County v. Harrell, 202 S. W., 160, writ of error refused; Wright v. Allen, 257 S. W., 980, writ refused; Major v. Aldan Borough, 209 Pa., 247, 58 Atl., 490; Scott v. Forest, 174 Ky., 672, 192 S. W., 691.

"We have also examined many authorities relied on by appellees, such as Ardrey v. Zang, 60 Texas Civ. App., 295, 127 S. W., 1114, writ of error refused; Haverbekken v. Coryell Co., 112 Texas, 422, 247 S. W., 1086, by the Commission of Appeals; Stuckey v. Jones, supra; Black v. Strength, supra; 29 Corpus Juris, pp. 419 and 420, and notes 92 (a), 93 (a), and 93 (i), 93 (j), under the last citation; U. S. Statutes, 1923 Supp, 7477¼c. We have also read Robbins v. Limestone Co., 114 Texas, 345, 268 S. W., 915, by the Supreme Court on certified

questions.  In the last case JUDGE PIERSON, speaking for the Supreme Court, said:

"The establishment of public highway being primarily a function of government belonging to the State, the right to establish them residing primarily in the Legislature, and, in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the State, or to such other agency or instrumentality, general or local in its scope, as it may determine.  The exercise of this right by a political subdivision of the State, or by local officers, is founded upon statutory authority therefor.  The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate," citing authorities.

"The court further said:

"The Legislature then has the sole and exclusive power pertaining to public roads and highways, unless and only to the extent that power may be, if at all, modified or limited by other plain provisions of the Constitution. * * *

" 'This provision of the Constitution does not divest the Legislature of control over public roads and highways, but provides methods and means by which roads may be constructed under legislative provisions.'

"The court further said:

" 'We do not deem it necessary to state the provisions of the highway statutes.  They do, of course, create an agency in which are vested powers to formulate and execute plans and policies for the location, construction and maintenance of a comprehensive system of State highways and public roads.

" 'Formerly, under "the laws of the State," these powers were exercised by the County Commissioners Court, but, as it was constitutionally authorized to do, the Legislature created another agency, to-wit, the State Highway Commission, and invested it with certain powers and functions, same to be performed and executed in conjunction with other agents and agencies of the State.  The powers here bestowed by the Legislature are not different from those formerly vested in the Commissioners Courts, which are in no sense a delegation of legislative authority, or a delegation of the power to suspend laws.'

"We have been interested in reading this case as having a bearing on the issues presented in the second question above."

### OPINION.

It appears from the foregoing certificate that the election order in question specified that one of the purposes of said bond issue was for the construction and improvement of a highway "from the courthouse at Seymour on State Highway 24, through Westover to the east line of Baylor County." - It appears that State Highway 24 was then a part of a general State highway system that had been planned by the State Highway Commission, and that it extended from Mineral Wells in Palo Pinto County to Benjamin in Knox County. The intermediate points of control through which said Highway 24 was to pass were Jacksboro in Jack County, Graham and Olney in Young County, and Seymour in Baylor County, in the order named.

The particular location of State Highway 24 on the ground between any two of the intermediate points of control had not been made. And the proper Federal authority had approved such highway, as so planned, for the purpose of extending Federal aid in the construction thereof. His approval covers said points of control, but he expressly reserved his approval of the route and location of the proposed highway between the various points of control, pending future determination by survey and investigations and actual location of same on the ground. And the State Highway Commission held to the same attitude with reference to the actual location on the ground of such intermediate route of the highway which they had planned and designated as State Highway 24. This was the situation relative to such planned highway at the time the order of said bond election was made, and the election held thereunder. However, it was believed by many voters of Baylor County at the time that the route of State Highway 24 had been actually located and established by the Highway Commission between Seymour and Westover along the line of the roadway described in plaintiff's petition, which was also known as the FFF Highway. Such last mentioned roadway had been designated by a district engineer of the State Highway Department as State Highway 24 for maintenance purposes. It was generally known in Baylor County, at the time such bond election order was made and the election held, that State and Federal aid was to be procured in the construction and improvement of the highway for the construction and improvement of which the said bonds were proposed to be issued. The voters were charged with notice that such State and Federal aid could be secured only on condition that the route or location on the ground of such

highway between Seymour and Westover should be approved by the proper State and Federal authorities. U. S. Comp. Stat. (1923 Supp.), Sec. 7477¼; also State Highway Statutes.

We are of opinion that it must be held that, since the order of election designated the courthouse at Seymour and the town of Westover as controlling points for such proposed road, the fixing of such definite and specific places as points to be reached by such road will be given effect; and a portion of the bond money must be applied to the construction and improvement of a road between those two places. Moore v. Coffman, 109 Texas, 93. But in view of the generally known purpose to obtain State and Federal aid in the construction of said road, the location of the route of same upon the ground between said two last mentioned points (as well as between Westover and the east line of Baylor County) was left to the discretion of the Commissioners Court in order to make same a section of State Highway 24 as planned and approved by the State and Federal authorities, and thereby render it subject to State and Federal aid. Under the circumstances of this case, the designation of "State Highway 24" in the order of election, must be held to mean and refer to the proposed State Highway of that number, which fixed points of control as adopted by the State and Federal authorities, subject, however, to the additional requirement, fixed by such order of election, that the town of Westover should also be a point of control.

The effect of such order and the election thereunder, was, under the facts and circumstances, equivalent to vesting, and such election did vest, the Commissioners Court with the discretion to expend a part of such bond money in the construction and improvement of a public road to be established along such a route between Seymour and Westover as they found necessary or proper to meet the approval of the State and Federal authorities, and to obtain the desired State and Federal aid.

We therefore recommend that the first certified question be answered in the negative, provided the defendants' said answer is verified by oath as prescribed by statute. The second certified question should be answered as follows: Under the facts and circumstances of this case, the facts recited in said second certified question do have effect in this case. Such effect being to explain and give application to the term "State Highway 24" as used in the election order, thereby showing that by said election the Commissioners Court was vested with the discretion to expend such a part of the proceeds of said bonds as

they deem necessary, in the construction and improvement of the public road established by order of said court on March 16, 1925.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

C. M. Cureton, Chief Justice.