### SINGELTARY, County Judge, et al. v. HEATHMAN et al. (No. 9097.)*

Court of Civil Appeals of Texas. Galveston. Oct. 18, 1927.

Rehearing Denied Nov. 10, 1927.

1. Highways ⬅105(1)—County commissioners' court or state highway commission held not precluded from relocating state highway, after highway bond election.

Commissioners' court of county or state highway commission *held* not, by reason of promises by publicity committee, during campaign for highway bond issue, nor by having designated highway over certain route and securing appropriation for construction thereof, precluded, either as under inhibitory contract or estoppel, from changing designation to and relocating route of state highway along shorter way.

2. Highways ⬅105(1)—Designation and location of federal-aided state highway may be made only by state highway commission with approval of federal bureau of roads (23 USCA § 1 et seq.; Vernon's Ann. Civ. St. 1925, arts. 6663–6701).

Under 23 USCA § 1 et seq., and Vernon's Ann. Civ. St. 1925, arts. 6663–6701, designation and location of federal-aided state highway before inception of move to raise funds by bond election not specifying particular route can be legally made only by state highway commission under its own plans and specifications, with approval of federal bureau of roads.

3. Highways ⬅105(1)—Attempted designation of federal-aided state highway by state highway commission without approval of federal bureau of roads and state highway engineer held ineffective (23 USCA § 1 et seq.; Vernon's Ann. St. 1925, art. 6674d).

Under 23 USCA § 1 et seq., and Vernon's Ann. Civ. St. 1925, art. 6674d, attempted desig-

nation of route of federal-aided state highway by state highway commission without approval of federal bureau of roads *held* ineffective, particularly where state highway engineer also refused to approve plans and specifications therefor.

4. Highways ⬅130½—Taxpayers residing near state highway held not legally aggrieved by promises of members of commissioners' court during campaign for highway bond election.

Taxpayers of county residing near route which was attempted to be designated as federal-aided state highway after county election for bonds, part of which were to be used for state highways, *held* not legally aggrieved by action of members of commissioners' court during campaign for election, whereby they were led to believe that route would be located as proposed, in absence of bad faith on part of such officials.

5. Highways ⬅105(1)—Ownership, location, and control of state highway system is vested exclusively in state highway commission, subject to approval of federal bureau of roads (U. S. Highway Act of 1921 [23 USCA § 1 et seq.]).

In absence of specification, designating certain route for state highway in order for election on bonds, ownership, location, and control of state highway system, which was also a recipient of federal aid as such, was vested exclusively in state highway commission, subject only to qualification, under United States Highway Act of 1921 (23 USCA § 1 et seq.), that approval of location by federal bureau of roads must be had before construction work could begin.

6. Judgment ⬅707—Enjoining order affecting federal-aided state highway had no effect on state highway commission or federal bureau, not party to action.

Order enjoining expending money, proceeds of bond issue, toward construction of certain route designated as state highway, *held* abortive, in that it could have no effect on either state highway commission or federal bureau of roads, neither of whom was party to action.

Appeal from District Court, Walker County; Carl T. Harper, Judge.

Suit by J. M. Heathman and others against P. H. Singeltary, County Judge, and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Joseph F. Henson, Co. Atty., and Dean & Humphrey, all of Huntsville, for appellants.

M. E. Gates, of Huntsville, and J. S. Bracewell, of Houston, for appellees.

GRAVES, J. For some time prior to February 15, 1924, highway No. 19, extending across Texas from Paris to Galveston, through Walker county, via both the towns of Riverside and Huntsville therein, had been a federal-aided state highway in the 7 per cent. class, pursuant to the federal Highway Act of November 9, 1921 (U. S. Comp.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted February 8, 1928.

St. § 7477¼ et seq. [23 USCA § 1 et seq.]), and had been designated and accepted by the federal bureau of roads as one among the highways to be laid out and improved as a primary road through the state.

Charged with knowledge of and with that fact in mind at the time, the commissioners' court of Walker county, on the date given, ordered a county-wide election to be held on March 29, 1924, to determine whether or not $1,500,000 in bonds of the county should be issued for "the purchase, construction, maintenance, and operation of macadamized, graveled, or paved roads, or turnpikes, or in aid thereof, throughout the county of Walker," as well as whether a sufficient tax should be levied for their retirement. Contemporaneously with the call for the election, the court also, by a written order then spread upon its records, gave public notice that, should the bonds be voted, it would spend the proceeds as follows:

"A sufficient sum, not to exceed $400,000, shall be spent in retiring the outstanding indebtedness of the present road districts of Walker county, Texas; a sum not to exceed one million dollars shall be spent on the state highways in Walker county, Texas; and a sum not less than $100,000 upon roads other than state highways in Walker county, Texas."

In the interim between this thus accompanied call for and the holding of the election, a campaign about the matter was conducted over the county, during which it was so frequently and generally noised abroad by reiterated statements in the local newspapers and by speakers in public addresses, some of whom were members of the commissioners' court, that the consistent purpose and objective of that body was—as its quoted advance notice presaged—to spend the remaining proceeds of the $1,500,000 issue, after the pre-existing road district debts and the lateral non-state highways were cared for, upon state highways, among which was federal-aided highway No. 19, running through the county from Riverside on the north to Huntsville, thence south to the Montgomery county line, that the voters must be found to have so understood in casting their ballots upon the proposal to issue the bonds.

The election was duly held, the proposal overwhelmingly carried, and $950,000 of the authorized $1,500,000 in bonds issued and sold, out of the proceeds of which the road district debts and lateral non-state highways were provided for to the amount of $515,000, leaving about $300,000 of money in the county depositors subject to the control of the commissioners' court as well as $550,000 of the bonds still unissued. There were two routes by which highway No. 19 might run between the control points of Huntsville and Riverside, one by way of "Cline's Prairie" to the west, called the "long" route, the other by "Ryan's Ferry" toward the east, called the "short" or "straight line" route; the latter being the nearer by about four miles.

With the undisputed evidence in the record showing this situation as its background, came this cause; the trial court, on June 16, 1927, at the suit of the appellees—taxpaying citizens of Walker county owning property adjacent to the "Cline's Prairie" route—brought in behalf of themselves and all others similarly situated against the county and the members of its commissioners' court as such, neither the state highway commission of Texas nor the federal bureau of roads being made a party, enjoined the defendants, who are the appellants here, from thereafter expending any part of the proceeds of the $1,500,000 bond issue toward the construction of the "short" or "straight line" route; that is, the route via Ryan's Ferry, between these towns of Huntsville and Riverside.

In so decreeing the court held, as its included findings of fact make manifest, that the commissioners' court of Walker county and the state highway commission had prior to that date—irretrievably as against the protests of the appellees—so designated, located, maintained, and improved the "long" route via "Cline's Prairie" as constituting the course of state highway No. 19 between Huntsville and Riverside as to be powerless to thereafter change, relocate, or reroute the same as running via the "short" or "Ryan's Ferry" route, to the detriment of the appellees, whose property rights would be injuriously affected thereby. The material substance of these findings, as stated in the judgment, is as follows:

(1) Prior to the campaign for this bond election, the state highway commission had taken over all the state highways in Walker county for maintenance purposes, inclusive of that section of highway No. 19 between Huntsville and Riverside by the way of "Cline's Prairie" as a part thereof, and had thereafter until the rendition of this judgment continuously maintained them.

(2) The voters residing along this "Cline's Prairie" route of highway No. 19 supported the bond issue in reliance upon promises made them during the campaign therefor by a publicity committee, which were known to and acquiesced in by the county judge and at least two members of the commissioners' court, that such route would be designated as highway No. 19, and that was the general understanding among these voters.

(3) The commissioners' court made an order on November 19, 1924, which, never having been appealed from or nullified, is still the valid judgment of that court, designated highway No. 19 from Huntsville to Riverside as being via "Cline's Prairie," under recitation therein that the "short" or "Ryan's Ferry" route had been rejected, since the purpose of the issuance of the bonds was for local benefit, and the "short" route offered none.

(4) Thereafter, on June 22, 1925, the state highway commission also designated that highway as running via "Cline's Prairie," and about May 10, 1926, appropriated $65,000 for it, ordering the engineer to prepare plans and specifications and advertise for bids covering the dirt work thereon.

(5) Under the order of the county judge, entered on the minutes of the commissioners' court on June 4, 1925, the Walker county engineer made a complete survey and designation of this "Cline's Prairie" route late in 1925, which the appellants accepted, and in early February of 1926 they began to and did acquire right of way deeds to nearly all of such route. These deeds conveyed the land as the right of way for highway No. 19, so passed the legal and equitable title thereto to appellants, have been placed of record by them, and have not been reconveyed or tendered back to the grantors.

(6) The federal and state departments had agreed with appellants upon the designation of highway No. 19 through the corporate limits of Huntsville in a northern direction along and upon Avenue L, thence coming from the south to continue in the same general direction of Avenue L, the course of which is generally the same as the "Cline's Prairie" route, but is at right angles with the "Ryan's Ferry" route.

(7) On July 9, 1926, the commissioners' court made contracts for a bridge across Harmon's creek and for connecting roadwork on the opposite sides of it, aggregating a total length of 1.1 miles, along the "Cline's Prairie" route as so surveyed and designated by the county engineer, both contracts being approved by the state highway commission in advance, and the work of both kinds, after being thereafter done under its plans and specifications at a cost of about $30,000, was approved by it and paid for in equal shares by itself and Walker county.

(8) About November 16, 1926, the highway commission of the state, after considering a petition of protest wherein the designation of the Huntsville to Riverside section via "Cline's Prairie" was sought to be moved to the "short" or "Ryan's Ferry" route, refused the same, and reaffirmed its designation of the former.

(9) The failure to construct highway No. 19 along the "Cline's Prairie" route would materially damage practically all the people living along it, especially the grantors of the right of way deeds thereto and Messrs. Earnest, Crawford, Smith, and Johnson. Mr. Earnest's pecan orchard, through which the route runs for a considerable distance, has been to that extent destroyed, and his house has been moved out of the highway, which has been fenced along there as designated. Messrs. Crawford, Smith, and Johnson have each, on faith of such designation of that route, invested in property and put up im-

provements along it, which otherwise they would not have done, and these investments would be greatly reduced in value by a change.

(10) The location of highway No. 19 along the "Ryan's Ferry" route would not be nearly so beneficial to Walker county as the "Cline's Prairie" location; that would place it within five or six miles of highway No. 45, which is also to be hard-surfaced, and would leave much thickly populated territory to the west, between it and highway No. 32, without accessibility to a state or federal highway.

(11) The orders of the commissioners' court of November 19, 1924, and the highway commission of June 22, 1925, constituted a refusal to recognize the road between Huntsville and Riverside as a federal project, and by reason thereof it became on the latter date and has thereafter continuously remained a purely state one, via "Cline's Prairie."

(12) The designation by the way of "Cline's Prairie" is accessible to the community of Falba, and during the campaign for the bond issue at a speaking at Falba, while the county judge and two of the commissioners were present, a verbal promise was made to the voters there by one of the speakers that such community would have accessibility to two miles of highway No. 19, and the commissioners and county judge present offered to enter into writing agreeing to carry out the contract.

(13) About May 1, 1926, the commissioners' court authorized its county judge and engineer to secure from the state highway commission an emergency appropriation for the above-mentioned bridge over Harmon's creek and the roadway work, as well as an allotment for the construction of highway No. 19, and that about May 10, 1926, the state commission did allow $65,000 toward the construction of that highway by the way of "Cline's Prairie," a part of which was used in building the bridge and doing the roadwork at Harmon's creek.

(14) On April 30, 1927, in compliance with a conditional change in the designation of such highway No. 19 by the state highway commission of April 25, 1927, appellants voluntarily, without any attack having been made by any one upon their prior designation of November 19, 1924, and without notice to the appellees, none of whom were present, entered an order attempting to relocate and redesignate such highway between Huntsville and Riverside as running along the "short" or "Ryan's Ferry" route. They are now threatening to, and unless restrained will, expend part of the proceeds of the bonds upon the construction of such "short" route, and to do so will cause the appellees and others similarly situated irreparable damage, as well as constitute an abuse of the

discretion and an overstepping of the legal authority of the commissioners' court.

[1] Many of these findings are challenged as lacking support in the evidence; but we do not stop to determine that feature of the controversy, since this court is unable to agree with the learned trial judge that any of the matters so stated, taken and considered with other and countervailing facts undisputedly appearing in the proceedings, precluded the commissioners' court of Walker county or the state highway commission, either as under inhibitory contract or estoppel, from changing the designation to and relocating the route along the shorter way via "Ryan's Ferry," as was done in their several orders of April 30 and April 25, 1927, respectively, thus referred to in the fourteenth finding, supra.

The relocation was in fact made by the highway commission, which by this order to that effect of April 25, after requiring as a condition precedent that the commissioners' court "pass a resolution that the road to Cline's Prairie will be maintained as a first-class county road," further allotted federal aid to the construction of the redesignated "straight line" or "Ryan's Ferry" route as soon as available, to the extent of 50 per cent. of a maximum cost of $30,000 per mile, provided that Walker county would ultimately contribute one-third of such cost. The commissioners' court five days thereafter simply met the conditions so imposed upon it and acquiesced in the relocation so made in its order of April 30, as follows:

"Now, therefore, the commissioners' court of Walker county, in special session, on this the 30th day of April, A. D. 1927, does hereby agree, in consideration of the resolution above mentioned, to take over and maintain said long road from Huntsville to Riverside as a first-class county lateral road, when same shall be turned over to it by the state highway department upon completion of said short road above mentioned."

[2] Highway No. 19 all through Walker county being a federal-aided state highway at the inception of the move to raise the funds here involved, as before shown, and the terms of the election for the bonds not specifying the particular route, its designation and location in every part thereof could be legally made only by the state highway commission under its own plans and specifications, with the approval of the federal bureau of roads. U. S. Comp. St. § 7477¼ et seq., title 116, chapter 1, Vernon's Ann. Civ. Statutes; Quisenberry v. Mitchell (Tex. Com. App.) 292 S. W. 160, and cited authorities.

[3] In this instance, not only has the federal bureau at all times refused to approve the location of the Huntsville-Riverside section of it via the Cline's Prairie route, while as consistently being always willing to approve its location on the short or Ryan's Fer-

ry route, but the state highway engineer himself has likewise refused to ever approve plans and specifications for the former or long way. The attempted designation of that route by the highway commission on June 22, 1925, and November 15, 1926, without that approval, were therefore doubly ineffective, not being in conformity to either federal or state law. U. S. Comp. Statutes, § 7477¼; Vernon's Ann. St. 1925, art. 6674d.

Just why the two public bodies thus went through these successive proceedings looking to a location along the long route without this expressly undispensable federal approval does not appear from the record, but it does appear that not a scintilla of evidence was offered questioning their good faith in so doing. That being conclusively presumed, the explanation must be in an ad interim expectation on their part that the federal bureau would yet lend its approval. As already indicated, however, that hope proved vain, the proof uncontrovertedly showing that the highway commission had originally—that is, soon after the bonds were voted in 1924—located the road along the short route, which designation the federal authorities had promptly approved, and that the latter had never thereafter receded from that choice between the two.

Such being the pre-existing status of the matter, on February 15, 1927, the highway commission, when pressed for its own approval of plans and specification it had previously ordered for the Cline's Prairie route, requested the commissioners' court to have the county engineer of Walker county survey the short route and make report thereof to it, which was complied with and done. Then, on April 25, 1927, at a regular meeting of the state commission, after full notice to all the interested parties and a hearing at which they were all represented in person and by attorneys, it made its above-described order of that date, relocating the road along the short route.

[4] The appellees themselves were just as much charged with knowledge of and bound by the impotency of all these recited proceedings with reference to the Cline's Prairie route as were the members of their commissioners' court, because it was the written law of the land throughout the period of their occurrence. Quisenberry v. Mitchell, supra, at page 163. There being no bad faith on the part of these officials, only acts not in conformity with law, the former were not legally aggrieved thereby.

[5] Had the order for the election upon the bonds designated the Cline's Prairie route, or even such points of control that it must have run by there, the resulting funds could not have been expended upon a different way, as the Commission of Appeals held in the Quisenberry Case; but there being no such specification, and the highway for which the

money was voted to be expended being not only a part of the state highway system, but also a recipient of federal aid as such, its ownership, location, and control were vested exclusively in the state highway commission (Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915), subject only to the qualification that, under the United States Highway Act of 1921, the approval of a location on the ground by the federal bureau of roads must first be had before construction work could begin.

[6] When, therefore, the highway commission, in the exercise of this plenary power, for its own part finally on April 25, 1927, relocated this road as running along the shorter way by Ryan's Ferry, and the federal bureau added its approval, the commissioners' court of Walker county could properly do nothing else than follow suit. It follows that the order appealed from was improvident, in that it restrained the appellants from doing the only thing they had discretion to do in the circumstances, and abortive in that it could have no effect upon either the highway commission or the federal bureau of roads, neither of whom was a party to the action.

The judgment has accordingly been reversed, and the cause rendered in appellants' favor.

Reversed and rendered.