**FLETCHER et al. v. HOWARD et al.**
No. 3420.

Court of Civil Appeals of Texas. Amarillo.
March 12, 1930.
Rehearing Denied April 2, 1930.

Vickers & Campbell, of Lubbock, for appellants.

Robbert Lee Bobbitt, Atty. Gen., and W. Dewey Lawrence, Asst. Atty. Gen., for appellees.

RANDOLPH, J.

This appeal is from an order of the district court of Childress county, denying the plaintiffs a temporary writ of injunction.

The plaintiffs, C. E. Fletcher and others, resident, property taxpaying voters of Childress county, seek a temporary injunction to restrain the county judge and commissioners' court of Childress county from making expenditures out of certain proceeds of bonds voted by the voters of Childress county, upon any road building project save and except construction of highway No. 4, as it is and as it existed on December 21, 1927, and on state highway No. 5, as it is and was on said date, until such time as this cause can be heard on its merits, and that the defendants highway commission be restrained from appropriating any part of said proceeds until such time as this cause can be heard as aforesaid, and that the defendants, the highway commission, be likewise restrained from appropriating any part of said proceeds towards the building and paving of any other roads than highways Nos. 4 and 5, as they exist and did exist on and prior to December 21, 1927, and that they be restrained from changing the location of said highway 4, as it is and was designated and used on and prior to December 21, 1927, until the hearing on the merits.

There is no controversy at this time involving the location of highway No. 5, as that portion of the controversy seems to have been disposed of.

The question, and practically the sole question for us to consider on this appeal, is the action of the highway commission in ignoring the location of highway No. 4, as that highway is now located on the ground, so as to leave the road as the same exists from the north boundary line of Childress county to the south boundary line of said county approximately two miles west from the road now proposed to be located as highway 4, abandoning the present location with the work done thereon, from a point south of the town of Childress to said north boundary line, and also abandoning a bridge across Red river in the northern part of said county.

It appears from the petition that an election was held on December 21, 1927, at which the qualified voters of Childress county voted to authorize the issuance of bonds in the sum of $650,000, to provide for the construction, maintenance, and operation of macadamized, or paved roads or turnpikes, or in aid thereof. Said bonds were sold thereafter and the proceeds were put into the county treasury of said county.

Further, plaintiffs alleged that before the election at which said bonds were voted by the plaintiffs, and others similarly situated, an issue was raised as to what specific roads or highways in Childress county would be paved, and the kind and character of material which would be used to pave them. That thereupon it was agreed between the plaintiffs and other qualified voters of Childress

county, and the commissioners' court of said county acquiesced therein, that if the bonds were voted on December 21, 1927, that the proceeds thereof would be expended and applied to paving and improving state highways Nos. 4 and 5, as then designated and used and known by the public, and that the material to pave said roads would be of concrete or its equivalent, or a higher grade of material. In pursuance of said agreement between the parties named and for the purpose of advising the voters of Childress county of the way and manner in which the money derived from said bonds would be expended, the specific roads or highways to be paved, and the kind and character of material to be used to pave them, and in confirmation of said agreement said commissioners' court passed and entered on its minutes the following definite and specific order:

"Be it ordered by the Commissioners' Court of Childress County, Texas, that, in the event bonds are voted in the amount of $650,000.00, for the purpose of constructing, maintaining and operating the macadamized, gravelled or paved roads and turnpikes, or in aid thereof, that the proceeds from the sale of said bonds be used for the following specific purposes:

"State Highway No. 5, over its entire length in Childress County, from the Hardeman County line on the east to the Hall County line on the west, shall be constructed of concrete or its equivalent, or a higher grade of material, and shall pass through the town of Kirkland, Texas, over the length of Cleveland Street, through the town of Carey and the city of Childress.

"State Highway No. 4, over its entire length in Childress County, from the Collingsworth County line on the north to the Cottle County line on the south, shall be constructed of concrete, its equivalent or a higher grade of material."

It will be seen that the language of this alleged "confirmation" is not so broad as to include some of the interpretations put on it by the plaintiffs' petition. For one thing, it is alleged in the petition that the agreement was that the bonds voted were to be expended upon highways Nos. 4 and 5, as *then designated and used by the public.* This language is not in the order of the commissioners' court; however, taking the language of the order as entered, whether as an original proposition or as a confirmation, if this question was a matter of first impression, we would be constrained to hold that it was susceptible to the construction claimed to have been put on it by the plaintiffs. The highway 4 was at that time a designated and located state highway; it had been improved and graveled by and under the direction of the highway commission, from Childress town to the north line of Childress county, and the resident property taxpaying voters had voted

a bond issue of $35,000, which bonds were sold, and the proceeds thereof supplemented by the sum of $35,000, furnished through some means by the commissioners' court, expended upon said highway as it then existed.

■ These statements of fact are taken from the record as, against a general demurrer which the court sustained, the facts stated in the petition are presumed to be true.

■ This being the condition of highway No. 4 as it was then located on the ground, there was no other common sense interpretation to be placed upon the language of the commissioners' court order than that the construction contemplated was to be performed on highway No. 4 as it *then* existed.

The defendants claim that as no other point of control is named by the commissioners' court order between the south and north boundaries of Childress county, that the discretion vested in the state highway commission by law to change, locate or relocate the road, permitted them to make the changes which have been made in the relocation, or even the discontinuance of highway 4.

We take it that this proposition is correct, unless the defendants are estopped from making such relocation by the order entered by the commissioners' court above noted. There is no question in our minds but that the language used by the commissioners' court is such as to have reasonably induced the voters of Childress county to understand that the construction work referred to in the order was to be upon highway No. 4, *as it then existed,* but the question to be considered further, that the commissioners' court had no power or authority to enter into such an agreement, as pleaded by the plaintiffs, we will now discuss.

In the case of Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915, 919, the Supreme Court holds that the public roads belong to the state and not to the counties. While the counties are authorized and charged with the construction and maintenance of the public roads, within their boundaries, yet it was for the state and for the benefit of the state and the people thereof. That the Legislature has the sole and exclusive power pertaining to public roads and highways, unless and only to the extent that that power may be, if at all, modified or limited by other plain provisions of the constitution.

Further, the Supreme Court says: "The fact that the roads in Limestone county and in special road district No. 15 in Limestone county were constructed by funds raised by local taxation, and by the issuance of bonds which are still outstanding, does not prevent the state from taking them over or placing them under the control and management of other agencies. Their taking or the change of supervision over them is not the taking of the property of the county or road district,

within the meaning of state or federal Constitutions which prohibit the taking of property without just compensation or under due course of law. Such funds were derived by taxation or otherwise under authority of 'the laws of the state' for that purpose, and were not private funds belonging to the county or road district in a proprietary sense, but the roads were created and are being maintained through the exercise of governmental functions and powers and for the benefit of the general public, both in and out of Limestone county."

It has been held by this court in the case of Grayson County v. Harrell, 202 S. W. 160, that any agreement by the commissioners' court tending to preclude it from full and free exercise of its discretion as to the roads to be improved with the proceeds of bonds voted to be issued, and improvements of roads generally, is against public policy.

■ The broad powers vested by the Legislature in the highway commission and set forth in articles 6674a–6674n, Vernon's Annotated Civil Statutes, and the limitation placed upon any action of the county commissioners' court, except as aids to the highway commission, and the conditions existing and provided when federal aid is sought, have been such that no action can be taken by the commissioners' court that will bind the state highway commission or the federal bureau of roads. Therefore, whatever statements, representations, or promises were made by the commissioners' court of Childress county, they can have no binding force or effect on the highway commission or the federal bureau of roads, and the voters being charged with a knowledge of the law, are bound to know that the commissioners' court had no authority to bind either the highway commission or the federal bureau of roads, and that the power of the state highway commission and the federal bureau of roads to change, locate, or relocate any existing highway, controlled the power of the commissioners' court in such matter. Hence, if, as we have concluded, the voters were induced to vote for the bonds by reason of the order entered by the commissioners' court, such action on the part of the court could have no binding force or effect, and "it is just too bad."

In the case of Singeltary v. Heathman, 300 S. W. 242, 245, the Court of Civil Appeals at Galveston, discussing the power of the state highway commission to act independently in such matters, says: "Highway No. 19 all through Walker county being a federal-aided state highway at the inception of the move to raise the funds here involved, as before shown, and the terms of the election for the bonds not specifying the particular route, its designation and location in every part thereof could be legally made only by the state highway commission under its own plans and specifications, with the approval of the federal bureau of roads."

■ In the case at bar, the petition alleges that the new location of highway 4 called for the south boundary line and the north boundary line of Childress county. In the location and construction of the highway for that distance, no point of control was named between said boundary lines. The petition names none and the evidence establishes none. Hence, the highway commission was at liberty to use its discretion to locate the highway along an entirely different line between said boundary lines. Singeltary v. Heathman, supra.

In the matter of voters being charged with the impotency of the acts of the commissioners' court in laying out a highway from Huntsville via Cline's Prairie, and having it worked as a highway, when Cline's Prairie was not named as a control point, and they not having the authority to override the orders of the highway commission and the federal bureau of roads, the court says, in the case of Quisenberry v. Mitchell, 116 Tex. 378, 292 S. W. at page 163: "The appellees themselves were just as much charged with knowledge of and bound by the impotency of all these recited proceedings with reference to the Cline's Prairie route as were the members of their commissioners' court, because it was the written law of the land throughout the period of their occurrence."

In the Quisenberry Case cited above, it is held that in view of the generally known purpose to obtain state and federal aid in the construction of the road, that the designation of "State Highway No. 24" in the order of election, must be held to mean and refer to the state highway of that number, which fixed points of control as adopted by the state and federal authorities.

As stated above, the only points of control named in the order of the commissioners' court, as shown by the petition, were the north and south boundary lines of Childress county. Therefore, the state highway commission and the federal bureau of roads had, as between those boundaries, full discretion to locate or relocate the highways, and such discretion was not abrogated by the fact that the voters were induced to believe that the money would be expended upon highway No. 4, as it then existed.

We, therefore, affirm the judgment of the trial court.

HALL, C. J., not sitting.