## FLETCHER et al. v. ELY et al.
### No. 3879.

Court of Civil Appeals of Texas. Amarillo.
Oct. 5, 1932.

Rehearing Denied Oct. 25, 1932.

Vickers & Campbell, of Lubbock, for appellants.

James V. Allred, Atty. Gen., T. S. Christopher and J. A. Stanford, Jr., Asst. Attys. Gen., and L. L. King and C. C. Broughton, both of Childress, for appellees.

MARTIN, J.

In January, 1930, appellants presented their petition to the district court of Childress county, asking that the appellees, as members of the commissioners' court of said county, and also the members of the state highway commission, be temporarily restrained from expending certain bond money upon any road building project save and except state highway No. 4, as it existed on December 21, 1927, and praying on final trial for a permanent injunction. The relief prayed for was denied and a general demurrer to said petition sustained. An appeal was taken to this court, and the judgment of the lower court affirmed, which is reported in 26 S.W. (2d) 444, 446. A writ of error was thereafter granted, and upon a final hearing the judgments of the Court of Civil Appeals and the district court were reversed, and the cause remanded; the opinion by the Supreme Court Commission being reported in (Tex. Sup.) 39 S.W.(2d) 32, 34. These are referred to for a statement of the nature of this case except as we may find it necessary to make additions thereto.

This cause was transferred by agreement to Lubbock county, where a trial was had be-

fore the court on its merits and upon the same petition originally presented to the district court of Childress county, and judgment was there rendered denying the relief prayed for. The trial was upon an agreed statement of facts brought forward in the record.

The disposition of this case on the former appeal turned largely upon a construction of the pre-election order of the commissioners' court of Childress county as shown by the concluding paragraph of Judge Randolph's opinion, as follows: "As stated above, the only points of control named in the order of the commissioners'·court, as shown by the petition, were the north and south boundary lines of Childress county. Therefore, the state highway commission and the federal bureau of roads had, as between those boundaries, full discretion to locate or relocate the highways, and such discretion was not abrogated by the fact that the voters were induced to believe that the money would be expended upon highway No. 4, as it then existed."

The cases of Singeltary v. Heathman (Tex. Civ. App.) 300 S. W. 242, and Quisenberry v. Mitchell, 116 Tex. 378, 292 S. W. 160, 163, appear to have been given controlling effect in the decision reached.

It is again here contended by appellees that, since the only control points named in the order of the commissioners' court were the two points above mentioned, with no specifications as to the intermediate route, therefore appellees were at liberty to use the proceeds of the bond money between these points upon any route selected by them, and particularly did they have a right to use it as they were threatening to do, and that such use of it constituted a substantial compliance with said order.

The Heathman Case, supra, and the instant case were written on by the same judge, who took occasion to explain the difference between the two cases. A verbatim copy of the order of the commissioners' court in controversy is shown in the opinion of Judge Randolph, reported in (Tex. Civ. App.) 26 S.W.(2d) 444. If the order of the commissioners' court is to be given the broad legal effect claimed for it by appellees, it would have effectually disposed of the question before the Supreme Court. Its reversal constituted an implied holding against such legal construction under our interpretation of the opinion.

Judge Short in his opinion states the issue of this case in the following language: "The plaintiffs in error merely contended that neither the state highway commission, nor the commissioners' court, under the alleged facts of this case, have the authority to divert the proceeds from the sale of the bonds from being expended on Highway No. 4, as it existed on the date of the election, where it ap-

pears that no part of said proceeds were intended to be so used."

In the solution of the final question to be determined herein, we may proceed upon the hypothesis that the following propositions, directly or indirectly involved therein, are well settled:

■ (1) That any commissioners' court in Texas is within its legal rights in annexing a condition in its pre-election orders which fixes the exact purpose for which the bond money constituting the proceeds of a bond issue submitted to a vote is to be used. Moore v. Coffman, 109 Tex. 93, 200 S. W. 374.

■■ (2) That, in the absence of a definite identification of the specific road to be paved, a discretion exists in the commissioners' court as to which of two or more routes may be followed between control points named in the pre-election orders, which discretion, however, may be and is surrendered when in response to a referendum, under a proper order of submission, the particular route and road to be paved is identified and named. Brown v. Preston County Court, 78 W. Va. 644, 90 S. E. 166, 167; Wright v. Allen (Tex. Civ. App.) 257 S. W. 980.

■ (3) That, when the voters thus speak, the proceeds of the bond issue are "earmarked" with the character of a trust fund which may not be diverted to another purpose or project, and any such attempt will be enjoined by a court of equity. The result thus obtained has been referred to as having the binding effect and force of a contract. Black v. Strength, 112 Tex. 188, 246 S. W. 79; 19 R. C. L. pp. 1163, 1164; Roane County Court v. O'Brien, 95 W. Va. 32, 122 S. E. 352, 355.

■ (4) It is a cardinal rule of construction of instruments that the intent of the parties to same is the dominant ruling factor and that they should always be construed in the light of the circumstances surrounding the parties at the time of their making. 12 C. J. pp. 542, 1301; St. Louis, B. & M. Ry. Co. v. Hicks (Tex. Civ. App.) 158 S. W. 192.

We have here for decision in the light of the above legal principles only the question, as we view it, of whether or not the facts and circumstances of this record show that the proceeds of the bond issue in question were to be used to pave state highway No. 4 as it existed on the ground at the time of the aforesaid election. We are met at the threshold of a solution of this question with the pre-election order already referred to, which is very general and somewhat vague in its description of the road to be paved. We repeat it here.

"Be it ordered by the commissioners' court of Childress County, Texas, that, in the event bonds are voted in the amount of $650,000.00

for the purpose of constructing, maintaining and operating macadamized, graveled, or paved roads and turnpikes, or in aid thereof; and issued, that the proceeds from the sale of the bonds be used for the following specific purposes:

"State Highway Number Five over its entire length in Childress County, from the Hardeman County Line on the East to the Hall County Line on the West shall be constructed of concrete, its equivalent or a higher grade material, and shall pass through the town of Kirkland, Texas, over the length of Cleveland Street; through the town of Carey, and the City of Childress.

"State Highway Number Four over its entire length in Childress County, from the Collingsworth County line on the North to the Cottle County Line on the South shall be constructed of concrete, its equivalent or a higher grade material." ·

Keeping in mind that we are endeavoring here to arrive at the intention of all parties· with respect to the road to be paved, as gathered from the face of the above order interpreted in the light of the surrounding circumstances of the parties at the time it was made, we make note of the following facts agreed to by the parties and reproduced in the record as part of the agreed statement of facts:

"That at and previous to the time of the election, and at and previous to the date of the bond order and collateral order herein quoted, there existed a well-defined highway through Childress County which was known to the public generally as Highway No. 4, and that the same had been marked with Highway markers under the direction of the Highway Department, and that said road had been improved by the expenditure of a portion of a previous bond issue, said improvements costing approximately $70,000.00, which said sum was derived from the local county bond issue, and by being matched by State and Federal aid, and that said road had been and is now by the State Highway Commission maintained and generally used by the public, and that some twenty concrete culverts have been built on the Highway No. 4, under the direction of the Highway Department, and that both the State and Federal Government participated in the improvement and maintenance of Highway No. 4.

"That at the time of the bond election, to-wit: on December 21, 1927, and at the time of the entry of the collateral order quoted in paragraph 4 hereof, that State Highway No. 4 was a part of a highway extending across the State of Texas from Canada to Del Rio, Texas. That the said highway passed through the county of Childress, and over its entire length in Childress County, from the Collingsworth County line on the north to the Cottle County line on the south; that said

highway was and had been a Federal aided, State designated highway, pursuant to the State and Federal Highway Acts, and passed through the town of Childress. * * *

"That the $650,000.00 voted in bonds was to be used to pave the two State designated highways in Childress County, one of which was Highway 4, and that part of said highway which, as already indicated herein, is involved in this controversy, and that State Highway No. 4 was to be paved over its entire length in Childress County from the Collingsworth County line on the north to the Cottle County line on the south, and that said highway was to be paved with concrete or its equivalent, or a higher grade of material. That it was contemplated at the time of the bond election that said bond issue would be supplemented with State and Federal aid. * * *

"That the said Highway Department has layed [laid] out a new route or location as shown on the attached plat for Highway No. 4 from a point just south of the town of Childress north to the Collingsworth County line, substantially paralleling the old location of Highway No. 4, but varying in distance from a few yards to an average of two miles; that when the Commissioners' Court of Childress County agreed to the new location as layed [laid] out by the Highway Department of Texas and as approved by the Federal Bureau of Roads, that they did so to meet the requirements of said State Highway Department and the Federal Bureau of Roads in order to secure State and Federal aid in the construction of said road.

"That said relocated road passes along the west side of the corporate limits of the town of Childress, and about one hundred yards west of the city limits, but crosses State Highway No. 5 to the west, serving the town of Childress with a pavement into town. That when so served the road from the north into the town of Childress all the way over the pavement represents .57 miles the shorter route from the county line to the courthouse m Childress at Main and Ave. F, such distance arrived at by Resident Engineer Bacon by Auto measurement of old Highway No. 4, but that the proposed new Highway No. 4 misses the town of Childress.

"That said Highway No. 4 through Childress County was prior to and at the time of the bond election order, and at the time of the collateral order quoted herein, a Federal aided, State designated highway, and that the Federal Bureau of Roads has at all times since this controversy arose followed the recommendation of the Highway Department of Texas as to the new location, and in this sense has refused to approve the old location as it existed on the ground at the time of said orders, as has also the State Highway Department; but that both the State Highway

Department and the Federal Bureau of Roads have approved the new location from a point just south of the town of Childress north to the Collingsworth County line. * * *

"That some months after the election issuance and sale of the bonds a new railroad from Childress northwesterly across Childress County from Childress to Pampa was projected, right of way procured, and is now under construction; that the same is a part of the Burlington system, and leaves the main line of the Burlington road in the western portion of Childress and goes northwesterly across the county an average of two miles distant from the old Highway No. 4; that the new proposed Highway No. 4 parallels and substantially follows the railroad.

"That the plaintiff and those similarly situated relied upon the collateral order quoted in paragraph 4 hereof in voting for the bond issue. It is agreed that at two previous bond elections, when no such collateral order as was entered and quoted herein, was made, that said bond elections failed. That the collateral order of the court was entered as appears from the face thereof for the purpose of advising the voters where the money would be spent."

■ The exact location of the road between the north and south lines of Childress county was not described further than the above. In determining the exact location of highway No. 4 as it existed on and prior to the date of the election, there would seem to be no doubt of our right to here give application to the ancient maxim, "Id certum est quod certum reddi potest." This has been many times applied in determining the identity of grants in deeds vaguely described. 18 C. J. 180; Harris v. Iglehart, 52 Tex. Civ. App. 6, 113 S. W. 170; Dunn v. Taylor (Tex. Civ. App.) 107 S. W. 952; Lohff v. Germer, 37 Tex. 578; Roberts v. Hart (Tex. Civ. App.) 165 S. W. 473. That it could be made certain by proof is beyond question.

There existed at the time of the election and previous thereto a plainly marked "Federal aided and State designated highway pursuant to the State and Federal Highway Acts" through Childress county, known to the public as highway No. 4, that had been improved by the expenditure of a portion of previous bond issues, said improvements costing approximately $70,000, and was "matched" by state and federal aid. Thus this case clearly differentiates itself from Quisenberry v. Mitchell, 116 Tex. 378, 292 S. W. 160, 163, relied on by appellees. In that opinion it is expressly stated by Judge Harvey: "The particular location of state highway 24 on the ground between any two of the intermediate points of control had not been made."

■■ In the instant case, highway No. 4 had been definitely located and legally designated as a state highway from one end of Childress county to the other. It further appears that the state and federal governments were so well satisfied with its location that they had "matched" the amount of a previous bond issue by Childress county to improve this identical road. There was nothing as in the Quisenberry Case shown in this record that would put the voters on notice which, upon inquiry, would have revealed to them the intention of the state highway department and commissioners' court to change the route of highway No. 4. ⁻ On the contrary, such an inquiry would have revealed an apparent satisfaction by these with the old location as shown by the fact that they had spent many thousands of dollars in money to help improve it, and, we think, it will be presumed that they were then satisfied with its location under such circumstances. Any other conclusion would convict them of gross incompetency in handling public funds. The qualified property tax paying voters of Childress county, it is agreed, had twice before repudiated a bond issue to pave roads, but when, and only when, the order in question was passed for the purpose of advising the voters on what roads same would be expended, their consent was obtained at the polls for the expenditure of the bond money in controversy. Only one conclusion can be drawn as to what was in the minds of the voters of Childress county when the election was held, and that is that highway No. 4 as it then existed would be paved and not some other route, which, so far as this record shows, was never laid out until months after the election was held. What was in the minds of the commissioners' court when they passed the order in question, viewed in the light of all the surrounding circumstances and keeping specially in mind that the voters had theretofore refused to grant to the commissioners' court any discretion in spending this money as allowed by law? Could it be said that they secretly intended to spend the money upon another and different road than state highway No. 4 and wrote a vague order that they might be free to carry such unlawful purpose into effect? We decline under the recited circumstances to make a finding which comports with fraud rather than fair dealing. This is our duty as we understand the authorities, though we do not mean to imply that there is any evidence of bad faith on the part of anybody shown in this record, but do hold that, in case of a doubtful construction or intention and two contrary inferences are deducible from a given state of facts, that conclusion will be drawn which comports with honesty and fair dealing, rather than with fraud and deceit. 13 C. J. 540. Believing that only one reasonable inference can be drawn from this record and that is that all parties to the transactions at and preceding the election in question intended that the proceeds of the bond issue should be used on state highway No. 4 as it then existed, the

only remaining question is whether or not the funds are about to be diverted to another and different purpose. This involves a finding as to whether the road proposed to be laid out for a distance of 27 miles from Childress north constitutes a substantial compliance with the pre-election order. The old road went through the town of Childress north to the Collingsworth county line, along which resided many residents. The new route misses entirely the town of Childress, though it is connected with it by paved highway No. 5. It enters Collingsworth county two miles west of where state highway No. 4 entered as it existed in December, 1927. The proposed new road nowhere touches the old highway. The differences are described more fully in the former opinions, to which we refer.

■ The law does not require a literal performance, but there must be left to the parties substantially the benefits expected. If the changes have not materially detracted from these benefits, there has been a substantial compliance. Mo. P. R. R. Co. v. Tygard, 84 Mo. 263, 54 Am. Rep. 97; St. L., M. & S. E. R. Co. v. Houck, 120 Mo. App. 634, 97 S. W. 963. It is difficult to find precedents for the construction of a given contract, as each one turns on the meaning of its own language and the circumstances under which it was made. For a further discussion of this question, see Crow v. Clay County, 196 Mo. 234, 93 S. W. 369; Tobey v. Moore, 130 Mass. 448; Rothenberger v. Glick, 22 Ind. App. 288, 52 N. E. 811; Soohan v. Philadelphia, 33 Pa. 9.

■ Believing that the use of the bond money upon the new road constitutes an unlawful diversion thereof and that such new construction would not be a substantial compliance with the will of the voters as expressed at the election in question, it follows that in our opinion the trial court was in error in entering judgment denying the relief prayed for. Our view as to the paving of the new road not constituting a substantial compliance with the contract is somewhat strengthened by the fact that the Supreme Court Commission reversed this case for a trial upon its merits. This would seem to have been entirely unnecessary if we are wrong in this view, since the pleadings before it described the difference in the two roads in their essential details practically as the proof here shows them to have been.

The facts of this case are undisputed, and, believing that appellants herein were entitled to a permanent injunction against appellees as prayed for, such judgment will be accordingly so rendered.

Reversed and rendered.

HALL, C. J., not sitting.