February 24, 2004

The Honorable Marsha Monroe
Terrell County Attorney
Terrell County Courthouse
105 East Hackberry
Sanderson, Texas 79848

Opinion No. GA-0156

Re: Whether Terrell County may expend venue-project sales and use taxes collected under chapter 334 of the Local Government Code for certain improvements (RQ-0103-GA)

Dear Ms. Monroe:

You ask about Terrell County's authority to expend venue-project sales and use taxes collected under chapter 334 of the Local Government Code for improvements described in an expenditure plan, which you have included with your request.[1]

I.    **Background**

Chapter 334 of the Local Government Code authorizes cities and counties to impose sales and use taxes to finance venue projects,[2] which it specifically limits to certain kinds of facilities, improvements, and infrastructure. *See* TEX. LOC. GOV'T CODE ANN. § 334.001(2)-(5) (Vernon Supp. 2004). A county or municipality may by resolution "provide for the planning, acquisition, establishment, development, construction, or renovation of a venue project" if, among other things, the resolution is approved "by a majority of the qualified voters of the municipality or county voting at an election called . . . for that purpose." *Id.* § 334.021(a)(3) (Vernon 1999); *see also id.* § 334.024 (Vernon Supp. 2004) (election requirements). "The resolution must designate each venue project," *id.* § 334.021(b) (Vernon 1999), as must the order calling the election, *see id.* § 334.024(b) (Vernon Supp. 2004). The proposition on the ballot at the election must describe the venue project and specify the type of tax and maximum tax rate. *See id.* § 334.024(c). Proceeds of any tax approved by the voters and imposed by a municipality or county under chapter 334 must be deposited in a venue-project fund and may be used for reimbursing or paying "the costs of planning, acquiring,

---

[1]Letter from Honorable Marsha Monroe, Terrell County Attorney, to Honorable Greg Abbott, Texas Attorney General (Aug. 25, 2003) (on file with Opinion Committee) [hereinafter Request Letter]; *id.* (Exhibit C, Expenditure Plan).

[2]A municipality with a population of more than 1.9 million and a county with a population of more than 3.3 million may proceed under chapter 334 only if they create a sports and community venue district under chapter 335. *See* TEX. LOC. GOV'T CODE ANN. § 334.002 (Vernon Supp. 2004).

establishing, developing, constructing, or renovating" an approved venue project or operating or maintaining an approved venue project. *See id.* § 334.042(b), (d) (Vernon 1999).

You inform us that on September 11, 2000, the Terrell County Commissioners Court adopted a resolution "calling for a county election for the purpose of imposing a sales and use tax in the amount of one-half of one cent for the purpose of financing venue projects and related infrastructure." Request Letter, *supra* note 1, at 1. In November 2000, the Terrell County voters approved a proposition authorizing the county to impose a sales and use tax to fund a specifically described venue project. *See id.* at 2. Since the tax's effective date, the county has collected approximately $284,000, which it has deposited in a venue-project fund. *See id.*

The commissioners court resolution calling for the election on the tax describes a "parks and recreation system venue project" that would provide for improvements at existing parks and would also include acquisition of land and improvements at the three specific "public-use" sites. *See id.* (Exhibit A, Resolution). The proposition approved by the voters authorized the county to "provide for improvements to all existing parks and for acquisition and development of land and improvements for additional public use" at the three specific sites. *See id.* (Exhibit B, Proposition). With your request, you attach as an exhibit a document entitled "Terrell County Venue Funds Expenditure Plan" and a map of a proposed project. *See id.* (Exhibits C-D, Expenditure Plan & Map). The county now proposes to expend the chapter 334 tax proceeds on a venue project that consists of a convention and visitors center, two annexes to the center, and related infrastructure. *See id.*

## II.    Analysis

You ask about Terrell County's authority to expend chapter 334 tax proceeds on the improvements outlined in the Expenditure Plan. In particular, you ask:

> 1. Is the expenditure of funds on the venue project described in Exhibit C authorized by the proposition approved by the voters of Terrell County on November 7, 2000?

> 2. Is the expenditure of funds on the venue project described in Exhibit C authorized by the applicable provisions of Chapter 334 of the Texas Local Government Code?

Request Letter, *supra* note 1, at 2-3. Because chapter 334 of the Local Government Code is integral to answering your question about the ballot proposition, we address your second question first.

A.     **Whether the Expenditure Plan is Authorized by Chapter 334**

1.     *Statutory Definitions of "Venue Project," "Venue," and "Related Infrastructure"*

Sales and use taxes deposited in a venue-project fund may be expended only on voter-approved venue projects. *See* TEX. LOC. GOV'T CODE ANN. § 334.042 (Vernon 1999). Under chapter 334, the term "venue project" means a "venue and related infrastructure that is planned, acquired, established, developed, constructed, or renovated under this chapter." *Id.* § 334.001(5) (Vernon Supp. 2004). Section 334.001(4) specifically defines the term "venue" to mean

(A)  an arena, coliseum, stadium, or other type of area or facility:

(i) that is used or is planned for use for one or more professional or amateur sports events, community events, or other sports events, including rodeos, livestock shows, agricultural expositions, promotional events, and other civic or charitable events; and

(ii) for which a fee for admission to the events is charged or is planned to be charged;

(B) *a convention center facility or related improvement such as a convention center, civic center, civic center building, civic center hotel, auditorium, theater, opera house, music hall, exhibition hall, rehearsal hall, park, zoological park, museum, aquarium, or plaza located in the vicinity of a convention center or facility owned by a municipality or a county;*

(C)  a tourist development area along an inland waterway;

(D) *a municipal parks and recreation system, or improvements or additions to a parks and recreation system, or an area or facility that is part of a municipal parks and recreation system;*

(E)  a project authorized by Section 4A or 4B, Development Corporation Act of 1979 (Article 5190.6, Vernon's Texas Civil Statutes), as that Act existed on September 1, 1997; and

(F)  a watershed protection and preservation project; a recharge, recharge area, or recharge feature protection project; a

> conservation easement; or an open-space preservation program intended to protect water.

*Id.* § 334.001(4) (emphasis added). Given the nature of the projects Terrell County has proposed, subsections (4)(B) and (4)(D) are most relevant to your query. *See id.* Clearly, subsections (4)(A), (4)(C), and (4)(F) do not apply. Section 334.001(4)(E), amended in 2001 after the adoption of the sales and use tax in your county, does not apply to projects approved before its effective date.[3] However, as we will discuss at greater length below, in 2000 when the voters approved the Terrell County proposition, section 334.001(4)(E) included within the definition of "venue" "any other economic development project authorized by other law." Act of May 22, 1997, 75th Leg., R.S., ch. 551, § 1, 1997 Tex. Gen. Laws 1929, 1930 (enacting section 334.001(4)(D)), *amended by* Act of May 19, 1999, 76th Leg., R.S., ch. 784, § 1, 1999 Tex. Gen. Laws 3408, 3409 (renumbering section 334.001(4)(D) as 334.001(4)(E)).

In addition to a venue, a venue project may include related infrastructure. *See* TEX. LOC. GOV'T CODE ANN. § 334.001(5) (Vernon Supp. 2004). Section 334.001(3) defines "related infrastructure" to include

> any store, restaurant, on-site hotel, concession, automobile parking facility, area transportation facility, road, street, water or sewer facility, park, or other on-site or off-site improvement that *relates to and enhances the use, value, or appeal of a venue,* including areas adjacent to the venue, and any other expenditure reasonably necessary to construct, improve, renovate, or expand a venue, including an expenditure for environmental remediation.

*Id.* § 334.001(3) (emphasis added). Related infrastructure must relate to and enhance a venue or areas adjacent to the venue. *See id.*

###   2.     *Venue Project Based on a "Park Venue"*

Taken together, these definitions provide that a "venue project" consists of a venue under section 334.001(4) and any related infrastructure, as defined above. *See id.* § 334.001(3)-(5). From the resolution and the proposition you have provided, it appears that Terrell County originally proposed to undertake a venue project that would include improving existing county parks and adding new park-like "public-use" areas. *See* Request Letter, *supra* note 1 (Exhibits A-B, Resolution & Proposition). However, section 334.001(4)(D) includes within the definition of "venue" a *municipal* park system as opposed to a county park system. *See* TEX. LOC. GOV'T CODE ANN. § 334.001(4)(D) (Vernon Supp. 2004). Thus, the ballot proposition does not propose a "venue" under section 334.001(4)(D).

---

[3]*See* Act of May 24, 2001, 77th Leg., R.S., ch. 1044, §§ 1, 10(b), 2001 Tex. Gen. Laws 2310, 2311, 2313.

3.    *Venue Project Based on a "Convention-Center Venue"*

Given the difficulty in construing chapter 334 to authorize a venue project centered on a county-park venue, it appears that the county has drafted the Expenditure Plan to bring the proposed improvements under section 334.001(4)(B), which provides for convention-center venues. *See* Request Letter, *supra* note 1 (Exhibit C, Expenditure Plan). Section 334.001(4)(B) provides that the term "venue" includes "a convention center facility or *related improvement . . . located in the vicinity* of a convention center or facility." TEX. LOC. GOV'T CODE ANN. § 334.001(4)(B) (Vernon Supp. 2004). According to its plain language, a section 334.001(4)(B) "improvement" must be related to a convention center facility and must be located near a convention center or facility. Thus, an improvement must be developed and constructed either (i) in conjunction with a new convention center, or (ii) for an existing convention center.

Chapter 334 does not define the term "convention center facility," but the term is defined in two provisions authorizing cities and counties to collect and expend hotel occupancy taxes. *See* TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 1998) (words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, must be construed accordingly). In chapter 351 of the Tax Code, the terms "convention center facilities" and "convention center complex" are defined in pertinent part as "facilities that are primarily used to host conventions and meetings. The term means civic centers, civic center buildings, auditoriums, exhibition halls, and coliseums that are owned by the municipality or other governmental entity or that are managed in whole or part by the municipality." TEX. TAX CODE ANN. § 351.001(1) (Vernon 2002). Similarly, in chapter 352 of the Tax Code, those terms are defined to mean "civic centers, civic center buildings, auditoriums, exhibition halls, and coliseums that are owned by the county or that are managed in whole or part by the county." *Id.* § 352.001(2).

The Expenditure Plan proposes a new convention and visitors center, two annexes to the center, and related infrastructure. *See* Request Letter, *supra* note 1 (Exhibit C, Expenditure Plan). These improvements constitute a "venue project" as defined by section 334.001(3), (4)(B), and (5) if (i) the county intends to develop and construct a convention center facility and to undertake the other improvements and infrastructure described in the Plan in conjunction with the development and construction of the convention center facility, and (ii) the other improvements are related improvements located in the convention center facility's vicinity or infrastructure that relates to and enhances the convention center facility. *See* TEX. LOC. GOV'T CODE ANN. § 334.001(3), (4)(B) (Vernon Supp. 2004).

The Expenditure Plan does not provide sufficient information for this office to determine as a matter of law whether the Plan meets these two requirements. First, it is not clear from the Expenditure Plan that the proposed convention and visitors center would be a facility, such as a civic center, civic center building, auditorium, exhibition hall, or coliseum, primarily used to host conventions and meetings. *See id.* § 334.001(4)(B); *see also* TEX. TAX CODE ANN. §§ 351.001(2), 352.001(2) (Vernon 2002). In addition, the map attached to the Plan indicates that the specific site for the proposed convention center will depend upon land acquisition costs and other factors. *See* Request Letter, *supra* note 1 (Exhibit D, Map). Thus, it is not certain that the county actually has

firm plans to develop and construct a convention center facility in conjunction with the other improvements and infrastructure. If the county does not plan to develop a convention center facility, the Expenditure Plan improvements do not constitute a "venue project" within section 334.001(3), (4)(B), or (5). Moreover, the county proposes to develop or improve two convention-center "annexes," but it is not clear from the Expenditure Plan whether the annexes would relate to the convention center and would be located in its vicinity, *see* TEX. LOC. GOV'T CODE ANN. § 334.001(4)(B) (Vernon Supp. 2004), or would be infrastructure that "relates to and enhances the use, value, or appeal of" the convention center, *id.* § 334.001(3). This determination will depend in part upon the convention and visitor center's ultimate location. This office cannot make the fact findings necessary to determine that the Expenditure Plan complies with the statutory requirements. *See* Tex. Att'y Gen. Op. Nos GA-0106 (2002) at 7, JC-0328 (2000) at 4. However, the information you have presented strongly suggests that Terrell County has not proposed a venue project under section 334.001(4)(B).

4.     *Venue Project Based on an "Economic Development Project Venue"*

Finally, the commissioners court may consider whether the proposed improvements constitute a venue under former section 334.001(4)(E). At the time the voters approved the project, former section 334.001(4)(E) included within the definition of "venue" "any other *economic development* project authorized by other law." Act of May 22, 1997, 75th Leg., R.S., ch. 551, § 1, 1997 Tex. Gen. Laws 1929, 1930 (enacting section 334.001(4)(D)) (emphasis added), *amended by* Act of May 19, 1999, 76th Leg., R.S., ch. 784, § 1, 1999 Tex. Gen. Laws 3408, 3409 (renumbering section 334.001(4)(D) as 334.001(4)(E)).[4]

Former section 334.001(4)(E) incorporated into the definition of "venue" statutes specifically authorizing economic development projects, *see id.*; it did not incorporate statutes authorizing traditional governmental infrastructure. Thus, in order to proceed under former section 334.001(4)(E), the Terrell County Commissioners Court would need to (i) identify a law in effect at the time the voters approved the proposition that authorized an economic development project, and (ii) determine that the venue outlined in the ballot proposition constitutes an economic development project under that law. For example, in 2000, section 4B(a)(2)(B), article 5190.6 of the Revised Civil Statutes authorized funding for projects to "promote or develop new or expanded business enterprises."[5] In order to proceed under former section 334.001(4)(E) as it incorporated that provision, the commissioners court would have to specifically find that the venue will promote or

---

[4]The act that amended former section 334.001(4)(E) continued prior law in effect for purposes of projects approved before its effective date. *See* Act of May 24, 2001, 77th Leg., R.S., ch. 1044, § 10(b), 2001 Tex. Gen. Laws 2310, 2311, 2313.

[5]TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2)(B), *as enacted by* Act of Mar. 21, 1991, 72d Leg., R.S., ch. 11, § 2, 1991 Tex. Gen. Laws 37, *amended by* Act of May 22, 1993, 73d Leg., R.S., ch. 1022, § 3, 1993 Tex. Gen. Laws 4424, 4426, *amended by* Act of May 29, 1997, 75th Leg., R.S., ch. 1237, § 1, 1997 Tex. Gen. Laws 4710, *amended by* Act of May 25, 1999, 76th Leg., R.S., ch. 865, § 4, 1999 Tex. Gen. Laws 3546, 3548.

develop new or expanded business enterprises.[6]  *Cf.* Tex. Att'y Gen. Op. No. JC-0494 (2002) (concluding that sales taxes collected under section 4B of the Development Corporation Act of 1979 pursuant to an election proposition that limited tax use to business development purposes could not be used to construct a youth league football field at the city park that would not promote business development).  We do not further consider whether the proposed project could be a venue project within the meaning of former section 334.001(4)(E), and are not aware of any facts to support such a finding, but we suggest that the commissioners court examine the applicability of this provision.

**B.      Whether the Expenditure Plan is Authorized by the Election Proposition**

You also ask whether the venue project described in the Expenditure Plan is authorized by the proposition approved by the voters.  *See* Request Letter, *supra* note 1, at 2.

**1.      *Legal Standard***

Chapter 334 expressly requires that a resolution and ballot language proposing a venue project describe a specific venue project and provides that sales and use taxes deposited in a venue-project fund may be expended only for voter-approved venue projects.  *See* TEX. LOC. GOV'T CODE ANN. §§ 334.023, .024, .042 (Vernon 1999 & Supp. 2004).  Consistently with those requirements, the Terrell County Commissioners Court proposed and the Terrell County voters approved ballot language outlining a specific venue project.  *See* Request Letter, *supra* note 1 (Exhibits A-B, Resolution & Proposition).  Texas courts have held that the express terms of resolutions and orders calling a tax or bond election, at which voters are asked to approve financial undertakings of a governmental body relating to the purposes for which funds shall be used, become a contract with the voters who are entitled to receive substantially all of the benefits and security of that contract.  *See, e.g., San Saba County v. McCraw*, 108 S.W.2d 200 (Tex. 1937); *Fletcher v. Howard*, 39 S.W.2d 32 (Tex. 1931) (bond proceeds may not be diverted from highway described in county order as it existed on date of election); *Black v. Strength*, 246 S.W. 79 (Tex. 1922) (bond proceeds may not be diverted from improvements designated in order adopted subsequent to election order but prior to election); *Moore v. Coffman*, 200 S.W. 374 (Tex. 1918) (bond-financed bridge must be constructed at location designated in election order); Tex. Att'y Gen. Op. Nos. GA-0049 (2003) at 3, JC-0400 (2001) at 4-5.[7]

When election orders are not specific as to the projects for which taxes or bond proceeds will be used, the governing body has some discretion to make decisions about how funds will be spent.  *See Barrington v. Cokinos*, 338 S.W.2d 133, 143 (Tex. 1960) (holding that voters' approval of

---

[6]*See id.*

[7]In addition, representations of the governing body outside of its formal election orders or resolutions may also give rise to a contract with the voters regarding the use of funds. *See Inverness Forest Improvement Dist. v. Hardy St. Investors*, 541 S.W.2d 454, 460 (Tex. Civ. App.–Houston [1st Dist.] 1976, writ ref'd n.r.e.) (letter reflecting water district improvements had effect of pledging to voters that those improvements would be made with bond proceeds). *But see Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670, 676 (Tex. App.–Dallas 2002, pet. denied) (extraneous documents are not part of the contract with voters).

generally worded bond proposition to pay costs to eliminate railroad grade crossings gave city governing body discretion to use bond proceeds to acquire a right of way for the railroad); *Fletcher v. Ely*, 53 S.W.2d 817, 818 (Tex. Civ. App.–Amarillo 1932, writ ref'd) ("in the absence of a definite identification of the specific road to be paved, a discretion exists in the commissioners' court as to which of two or more routes may be followed between control points named in the pre-election orders"). On the other hand, when the voters approve a specific project, "the proceeds of the bond issue are 'earmarked' with the character of a trust fund which may not be diverted to another purpose or project." *Ely*, 53 S.W.2d at 818 (citing *Black v. Strength*, 246 S.W. 79 (Tex. 1922)).

Courts construe election propositions like other instruments – "the intent of the parties . . . is the dominant ruling factor and . . . they should always be construed in the light of the circumstances surrounding the parties at the time of their making." *Id.* at 818. "The law does not require a literal performance, but there must be left to the parties substantially the benefits expected. If the changes have not materially detracted from these benefits, there has been a substantial compliance." *Id.* at 821; *see also Thayer v. Greer*, 229 S.W.2d 833, 835 (Tex. Civ. App.–Amarillo 1950, writ ref'd n.r.e.) ("the order calling the bond election must be substantially complied with so that those who voted for the bonds would receive the benefits they had the right to expect").

### 2. *Applying the Legal Standard to the Facts*

The Terrell County voters approved the following proposition:

> Authorizing Terrell County, Texas to provide for improvements to all existing parks and for acquisition and development of land and improvements for additional public use and other improvements that relate to and enhance the use, value, or appeal of the public use sites designated as the East Gate Entrance Park, located on Highway 90 on the east side of Sanderson, adjacent to the Budget Inn, the Old Town Plaza, located near the Union Pacific Depot and Bunkhouse on Downie Street; and the Jav[e]lina Hill Scenic Overlook located at the northwest corner of the intersection off Wilson Street and U.S. Highway 90; and to impose a sales and use tax at the rate of one-half (½) cent for the purpose of financing the venue project described herein.

Request Letter, *supra* note 1 (Exhibit B, Proposition). In addition, the commissioners court resolution ordering the election lists specific improvements at each location. In particular, it lists a covered pavilion and restrooms in connection with general park improvements; parking and "road, street, water, or sewer facilities" at East Gate Entrance Park; a public plaza and visitor center at the Old Town Plaza; and nature trails at Javelina Hill Scenic Overlook. *See id.* (Exhibit A, Resolution).

Given the election's specificity, venue-project funds may be expended only for the improvements described in the proposition and resolution; the election's terms must be construed

in light of the voters' intent. *Ely*, 53 S.W.2d at 818. Moreover, the voters are entitled to "substantially the benefits expected." *Id.* at 820.

Reflecting the shift in reliance from section 334.001(4)(D) to section 334.001(4)(B), the Expenditure Plan transforms a project based on a county-park venue into a project based on a convention-center venue. *See* Request Letter, *supra* note 1 (Exhibit C, Expenditure Plan). The proposed work, however, appears to include much of the work described in the commissioners court resolution and ballot proposition. The Expenditure Plan provides that the venue project consists of a convention and visitors center at the Old Town Plaza site and two "annexes" to the center – "West Convention and Visitors Center Annex" and "East Convention and Visitors Center Annex." *See id.* The "West Convention and Visitors Center Annex" would be located at the Javelina Hill site and the "East Convention and Visitors Center Annex" would be located across the street from Bicentennial Park, an existing county park. *See id.* (Exhibit D, Map). The related infrastructure would include gardens and an outdoor museum adjacent to the convention and visitors center; a nature tourism trail and visitor's exercise trail and picnic area adjacent to the "West Convention and Visitors Center Annex;" and a pavilion, water playscape, and swimming pool renovations and improvements adjacent to the "East Convention and Visitors Center Annex." *See id.* (Exhibit C, Expenditure Plan).

Although much of this work appears to be contemplated by the ballot proposition and commissioners court resolution,[8] several specific projects listed in the Expenditure Plan were not specifically outlined in the election orders,[9] and the Expenditure Plan appears to omit certain improvements approved by the voters.[10] More importantly, whereas the ballot proposition focuses on improvements to existing parks and the development of new public-use sites, the Expenditure Plan centers on a convention and visitors center at the Old Town Plaza site and related

---

[8]*Compare* Exhibits A-B, *with* Exhibits C-D, Request Letter, *supra* note 1.

[9]In contrast to the Expenditure Plan, the election orders do not specifically mention a water playscape, gardens and outdoor museum, exercise trail, or picnic area. *Compare* Exhibits A-B, *with* Exhibits C-D, Request Letter, *supra* note 1. It is not clear whether these improvements could be included within more general items in the election orders.

[10]For example, the proposition provides "for improvements to all existing parks." Request Letter, *supra* note 1 (Exhibit B, Proposition). We understand that Terrell County has two existing parks, Bicentennial Park and Memorial Park. *See* Terrell County Parks, *available at* http://www.sandersontx.org/parks.html. The Expenditure Plan appears to provide for improvements at Bicentennial Park but not Memorial Park, which is not mentioned in the Plan. *See* Request Letter, *supra* note 1 (Exhibits C-D, Expenditure Plan & Map). Furthermore, the proposition provides for public-use sites at three areas: "the East Gate Entrance Park, located on Highway 90 on the east side of Sanderson, adjacent to the Budget Inn"; "the Old Town Plaza, located near the Union Pacific Depot and Bunkhouse on Downie Street"; and "the Jav[e]lina Hill Scenic Overlook located at the northwest corner of the intersection off Wilson Street and U.S. Highway 90." *Id.* (Exhibit B, Proposition). The Expenditure Plan provides for the development of a convention center at the Old Town Plaza site and for improvements at the "Javelina Scenic Overlook," which it calls "the West Convention Center Annex." *Id.* (Exhibits C-D, Expenditure Plan & Map). But the Expenditure Plan does not appear to provide for improvements at the "the East Gate Entrance Park," which is specifically listed in the proposition and described in the resolution. *Compare* Exhibits A-B, *with* Exhibits C-D, Request Letter, *supra* note 1.

improvements.[11] The election orders do not expressly include a convention and visitors center; rather, the commissioners court resolution describes a "visitor center" at the Old Town Plaza, which is listed in the ballot proposition as one of three public-use sites to be developed.[12] Thus, the expenditure plan has a different emphasis from the election order.

### III. May Terrell County Spend Taxes Collected under Local Government Code Chapter 334 for Improvements Described in its Expenditure Plan

#### A. Standard of Review Applicable to the Commissioner Court's Decisions

The commissioners court is the county's principal governing body. *See* TEX. CONST. art. V, § 18; *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997). Pursuant to article V, section 18 of the Texas Constitution, the "District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." TEX. CONST. art. V, § 18. *See* TEX. GOV'T CODE ANN. § 24.020 (Vernon 1988) (tracking language of Texas Constitution, article V, section 18); *Agan*, 940 S.W.2d at 80. A party may invoke the district court's constitutional supervisory control over a commissioners court judgment only when the court acts beyond its jurisdiction or clearly abuses its discretion. *See Agan*, 940 S.W.2d at 80 (commissioners court had discretion to allocate among county officers responsibilities not statutorily assigned to a specific officer); *Ector County v. Stringer*, 843 S.W.2d 477, 479 (Tex. 1992) (district court lacks jurisdiction to set constable's salary). Discretionary matters are for the commissioners court to resolve in the first instance, subject to judicial review. *See Agan*, 940 S.W.2d at 80. "If the Commissioners Court acts illegally, unreasonably, or arbitrarily, a district court may so adjudge." *Id.*; *see also Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936) (city officers' discretion to spend bond proceeds is limited by rule that bonds voted by the people must be expended for purposes for which they were voted.) Thus, where a statute vested particular duties in the county treasurer, the *Agan* court held that the commissioners court could not reassign them to the county auditor. *See Agan*, 940 S.W.2d at 82.

#### B. Application of Review Standard to Terrell County

We have addressed the legal questions raised by your request but we cannot resolve the related fact questions in the opinion process. *See, e.g.,* Tex. Att'y Gen. Op. Nos. GA-0106 (2002) at 7, JC-0328 (2000) at 4. The Terrell County Commissioners Court must make these determinations in the first instance, subject to judicial review for abuse of discretion. *See generally Agan*, 940 S.W.2d at 80. We note, however, that the specific differences between the improvements outlined in the election orders and the Plan, coupled with the shift in focus from a county-park venue project to a convention-center venue project, provide evidence that the Expenditure Plan is not consistent with either the voter's intent or the description of a venue project as a convention center facility under section 334.001(4)(B). Although this office cannot assess the ultimate factual

---

[11]*Compare* Exhibits A-B, *with* Exhibits C-D, Request Letter, *supra* note 1.

[12]*Compare* Exhibits A-B, *with* Exhibits C-D, Request Letter, *supra* note 1.

significance of these differences, the information you have presented strongly suggests that Terrell County's proposed expenditures will not comply with the applicable legal requirements for the expenditure of venue-project funds.

### C.     How Terrell County May Lawfully Expend the Chapter 334 Tax Proceeds

In the event this office "opine[s] that the expenditure of the venue funds on the venue project described in Exhibit C is not authorized by the voters or Texas law," you also ask us to address "(a) how the venue funds can lawfully be expended, or (b) how [] Terrell County should otherwise dispose of the venue funds." Request Letter, *supra* note 1, at 3 (Question 3). We have suggested that the commissioners court consider whether the proposed project could be a venue project within the meaning of former section 334.001(4)(E). Because the commissioners court has not addressed the relevance of this provision, it is unnecessary to consider the alternative disposition of these tax funds at this time.

## S U M M A R Y

The terms of the election pursuant to which the Terrell County voters approved the venue-project tax for park improvements constitute a contract with the voters, and Terrell County is authorized to use venue-project funds for improvements outlined in the current Expenditure Plan only if the improvements are consistent with the election orders.

Improvements proposed by Terrell County constitute a "venue project," as defined by Local Government Code section 334.001(3), (4)(B), and (5), only if Terrell County intends to develop and construct a convention center facility and to undertake other improvements and infrastructure in conjunction with the development and construction of the convention center facility, and if the other improvements are related improvements located in the convention center facility's vicinity or infrastructure that relate to and enhance the convention center facility.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee